UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 15-80114-CR-HURLEY/HOPKINS

UNITED STATES OF AMERICA

    Plaintiff,

v.

TIMOTHY R. CLANCY

    Defendant.

_____/

**MEMORANDUM ON BEHALF OF TIMOTHY R. CLANCY**

**IN AID OF SENTENCING**

**ATTORNEY FOR THE DEFENDANT**
RICHARD G. OZELIE, ESQUIRE
FBN: 266221
OzelieLaw, LLC
750 South Dixie Hwy.
Boca Raton, Florida 33487
Telephone:    (561) 299-3421
Facsimile:    (561) 395-9093
Email:        rozelie@OzelieLaw.com

Date: February 26, 2016

# I.

## INTRODUCTION

This memorandum and accompanying documentation is submitted to the Court to assist in the sentencing of Timothy Clancy. It is intended to supplement the information received from the United States Probation Office (USPO) through the Presentence Report (PSR). It has been prepared by undersigned counsel in conjunction with assistance from the National Center on Institutions and Alternatives (NCIA).[1] Following review of this document, we believe the Court will agree that a sentence with a variance from the guidelines and a recommendation for drug treatment will be sufficient to achieve the sentencing goals in this case.

In October 2015, Timothy R. Clancy plead guilty to a one-count information charging him with mail fraud in violation of 18 U.S.C. §1341. Through his plea, Mr. Clancy accepted full and complete responsibility for the fraud he committed on investors from the period January, 2007 through November, 2013. As acknowledged in the PSR, Mr. Clancy used investor funds to fuel a gambling addiction aggravated by an alcohol and drug addiction. It is significant to note that the withdrawals from the investor's accounts controlled by Mr. Clancy were made from casinos totaling over $2.3 million. Upon review of the PSR, it is evident that he had little control over his behavior during this time period. Mr. Clancy has admitted to his gambling addiction, as well as his alcohol and drug use/addictions and has voluntarily sought treatment during the

---

[1] NCIA has operated since 1977 as a nonprofit organization. Its Criminal Justice Services (CJS) provides services to defense attorneys, clients and courts throughout the country. CJS provides individualized sentencing evaluations, research and recommendations for persons who are facing incarceration. CJS services include sentencing reports, sentencing guideline assistance, capital case assistance, parole plans, disparity analysis, research, and institutional designation/transfer. NCIA has provided services to over 20,000 clients in all 50 states and in over 75 federal jurisdictions. NCIA has prepared disparity analyses for over 150 individuals being sentenced in federal court.

course of his criminal conduct and prior to arrest. In each of his attempts, however, he has ultimately failed in his efforts. As a result, on January 14, 2016, his pretrial supervision was revoked and he was remanded to the Main Detention Center in Palm Beach County, Florida, pending sentencing.

Through his guilty plea, his extraordinary remorse, his willingness to enter into treatment for his addiction to alcohol, drugs and gambling, Mr. Clancy has demonstrated to the Court that he is worthy of a second chance. He understands that he will be subject to a prison term, but we respectfully ask the Court to mitigate his sentence and allow Mr. Clancy to enter into the Residential Drug and Alcohol Program (RDAP) and re-enter society with an opportunity to rebuild his life and repay the victims of his unlawful conduct at the very earliest opportunity.

## II.

### AUTHORITY OF THE COURT TO IMPOSE A NON-GUIDELINES SENTENCE REPRESENTS THE MOST FAIR AND JUST RESOLUTION OF THIS CASE

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. §3553(a)(1)-(7) without giving mandatory weight to the sentencing guidelines under 18 U.S.C. §3553(a)(4). Indeed, as mandated by Congress, the fundamental principle of sentencing is that a court "*shall impose a sentence sufficient, but not greater than necessary*" to meet specified sentencing goals, including the goal of just punishment. Section 3553(a)(2) states that such purposes of sentencing are:

A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
B) to afford adequate deterrence to criminal conduct;
C) to protect the public from further crimes of the defendant; and
D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) The kinds of sentences available;
3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
4) The need to provide restitution to any victims of the offense.

In addition, a district court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Moreover, the Supreme Court has specifically ruled that, in balancing the §3553(a) factors, a judge may determine that, "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that

4

"the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or [that] the case warrants a different sentence regardless"). A district court may now vary from the applicable guideline range "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 128 S. Ct. at 570.

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is ***not*** an appropriate means of promoting correction and rehabilitation (emphasis added). In summary, in every case, a sentencing court must now consider ***all*** of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

### III.

### HISTORY OF GAMBLING AND DRUG ADDICTIONS

Mr. Clancy has a long history of addiction to alcohol, drugs and gambling coupled with depression. While this does not lessen his culpability in the current offense, these addictions combined with his mood disorder provide us with a better understanding of the mental and physical struggles that lead to his commission of the instant offense. By way of background, the PSR states that Mr. Clancy first experienced the gratifying rush associated with gambling when he was 18 years old. Early involvement in gambling activities is a predictor of problem gambling. Most adult males who develop disordered gambling issues begin gambling in preteen or teen years. Moreover, Mr. Clancy's gambling addiction was combined with and exacerbated by an addiction to both drugs and alcohol.

Beginning at paragraph 59 of the PSR, is a detailed description of Mr. Clancy's spiral into substance abuse. He began drinking at age 17 and experimenting with drugs during his early college years. Between 1987 and 2011, he used several different types of drugs combining both prescription medication and cocaine. Crack cocaine and opioids became his drugs of choice by 2011, and he continued using them until his bond violation arrest on January 14, 2016. During the last several years, he attempted and failed several times to control his addictions. In November, 2013, and again in April, 2014, Mr. Clancy first entered a one week detox program in Deerfield Beach, Florida and then he entered a five week detox and in-house residential rehab program at Delray Recovery Center in Delray Beach, Florida.[2] Mr. Clancy began attending Gamblers Anonymous meetings in 2013 and Narcotics Anonymous meetings in 2014. In or about November, 2013, Mr. Clancy voluntarily signed a ban excluding himself from all South Florida casino's operated by the Seminole Indian Tribe.

In the wake of the underlying investigation in this matter, the severity of Mr. Clancy's disorders became readily apparent. Disordered gambling, as in Mr. Clancy's case, is a physiological addiction on par with drug addiction. The scientific literature, discusses observable changes to the human brain of gambling addicts that are associated with more commonly understood forms of addiction such as drugs and alcohol. The same neurotransmitter patterns associated with need and reward—release of dopamine; changes in serotonin—are present in the gambling addict.[3] As the science consistently demonstrates, the urge to satisfy the need obscures and eclipses the fear of negative consequences and permits rationalization of poor choices. Moreover, drug addiction is a complex, chronic, often relapsing brain disease that causes drug

---

[2] Medical records from these facilities have been requested, but at the time of filing this Memorandum the records have not been received.
[3] http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3845016/
http://www.prnewswire.com/news-releases/gambling-addiction-blame-biology-not-the-individual-168793786.html

seeking and use, despite harmful consequences to the addicted individual and to those around him. It is a disease that affects both the brain and behavior. The path to drug addiction begins with the voluntary act of taking drugs.  Over time, a person's ability to choose not to do so becomes compromised. Seeking and taking the drug becomes compulsive. This is mostly due to the effects of long-term drug exposure on brain function. Addiction affects part of the brain involved in reward and motivation, learning and memory, and control over behavior.

It is not uncommon for individuals with co-occurring addictions to struggle with treatment[4].  Treatment research on substance addictions coupled with mental health disorders has shown that patients similar to Mr. Clancy struggle with treatment and often relapse[5]. For a person recovering from addiction, lapsing back to drug use indicates that treatment needs to be adjusted, or that another treatment be tried. Relapse can occur because addiction is a chronic disorder. As there is no cure, there is always the potential for relapse. Like any other chronic illness, addiction must be managed over time.

## IV.

### MR. CLANCY SHOULD RECEIVE CREDIT FOR ACCEPTANCE OF RESPONSIBILITY

In March 2014, Mr. Clancy was initially contacted by the FBI regarding this investigation. From the onset, he began cooperating with the Government's investigation of his unlawful conduct. On September 3, 2015, in coordination with the U.S. Attorney's office, Mr. Clancy surrendered, was charged with one count of mail fraud then released on bond. He promptly entered a guilty plea on October 22, 2015. According to U.S.S.G. §3E1.1, if a defendant "clearly" demonstrates acceptance of responsibility of his offense he is entitled to a two (2) level decrease in the applicable offense level. In the plea agreement, the Government

---

[4] https://d14rmgtrwzf5a.cloudfront.net/sites/default/files/rrcomorbidity.pdf
[5] https://d14rmgtrwzf5a.cloudfront.net/sites/default/files/rrcomorbidity.pdf

supports his receipt of both the two (2) level reduction and the additional one (1) level reduction. However, in the PSR it was recommended that he be denied credit for acceptance of responsibility due to testing positive for drug use while on bond. Overcoming a drug addiction is a long-term struggle and relapse is not uncommon, particularly for individuals with long-term drug addictions or co-occurring addictions as evidenced in the substance abuse section of the PSR.

During the five months Mr. Clancy was on bond, he complied with the conditions of his bond. Unfortunately, he was unable to overcome his drug addiction before being remanded into custody.  As documented in the presentence report, his conditions of bond were:

1) Surrender his passport to pretrial supervision and not obtain any travel documents. He surrendered his passport on September 3, 2015 and did not attempt to travel outside of Florida during his release.

2) Report to Pretrial Services as directed. Mr. Clancy reported as required.

3) Submit to drug testing and/or treatment as directed by Pretrial Services. Mr. Clancy consistently reported to Pretrial Services and submitted to at least three drug tests during the five months he was out on bail and he also began mental health treatment and sought drug abuse treatment.

4) Continue to attend Alcoholic Anonymous and Gamblers Anonymous meetings. Mr. Clancy regularly attended both Narcotic Anonymous and Gamblers Anonymous meeting and he refrained from frequenting casinos per his previously mentioned voluntary ban.

5) Refrain from any use of (drugs) and alcohol. He tested positive three times for drug use while on pretrial release.

6) Participate in mental health assessment and treatment. Mr. Clancy attended his evaluations at Compass Health Systems as directed by the USPO and then began seeing Dr. Steinberg in November 2015, for depression and his gambling addiction.

7) Maintain or actively seek full-time employment. Mr. Clancy maintained employment.

8) Avoid all contact with victims/witnesses. Mr. Clancy did so.

9) Refrain from possessing firearms. Mr. Clancy promptly sold this firearm on September 10, 2015.

It is evident that, with the exception of his struggles with drug addiction, Mr. Clancy has complied with the terms of his bond. Following his arrest on January 14, 2016, Mr. Clancy waived his bond revocation hearing and opted to remain in custody because he is aware of the extent of his drug addiction and his need for treatment.

Although the probation department can recommend that a defendant not receive credit for acceptance of responsibility, the ultimate decision is in the hands of the Court. Case law shows that "the district court's determination of whether a defendant is entitled to a reduction for acceptance of responsibility is a finding of fact that is entitled to great deference on appeal and will not be disturbed unless clearly erroneous." *United States v. Caraballo*, 595 F.3d 1214, 1233 (11th Cir. 2010). It is within the power of the Court to decide whether his struggles with drug addiction is a strong enough reason for denial of acceptance, or if other factors should also be considered. The Second Circuit Court of Appeals grappled with this same question in their decision to uphold the denial of acceptance of responsibility in the case of Kevin Woods. Mr. Woods was denied a reduction for acceptance of responsibility for three reasons. First, he tested

positive for cocaine use three times during his pre-sentence period. Second, Mr. Woods failed to report to the probation office weekly, instead he only reported once. Finally, he was involved in additional criminal actively while on bail.  The Court wrote in their opinion, *"We are doubtful whether the first factor would, standing alone, provide adequate ground for denying Woods a sentence reduction. Continued drug abuse may well signify addiction and dependence rather that lack of contrition."* *United States v. Woods*, 927 F.2d 735 (2d Cir. 1991). The Court clearly acknowledged that struggling with drug addiction was not the same as purposefully denying responsibility for a criminal offense.

Addiction is a serious health condition and not easily overcome as evidenced by Mr. Clancy's extended history of drug use and his multiple attempts at sobriety.  It is important to note that after his first positive drug test with Pretrial Services on September 4, 2015, Mr. Clancy attempted to refrain from using drugs. He passed a drug test conducted by Compass Health Systems in October of 2015 and during the evaluation he was found to be cocaine and opioid dependent and in "remission". However, he relapsed in November, 2015, as evidenced by his positive drug test on November 20, 2015 and again on December 23d and 29th, 2015. Considering Mr. Clancy's extensive history of drug usage, his relapse is not surprising. In fact, it is further evidence of his involuntary inability to refrain from usage as opposed to his voluntary choice to violate his bond conditions by participating in additional criminal conduct.

Research shows that combining treatment medications with behavioral therapy is the best way to ensure success for most patients. Similar to other chronic relapsing diseases, such as diabetes, asthma or heart disease, drug addiction can be managed successfully. Relapse,

however, does not signal treatment failure. Rather, it indicates that treatment should be adjusted as needed to help the individual regain control and recover[6].

Finally, the government is in support of Mr. Clancy being granted the full three (3) level reduction for acceptance of responsibility.[7]

Mr. Clancy is in need of treatment for both his mental health and addictions. His use of cocaine and opioids is more a function of his physical addiction than an attempt at maintaining criminal activities. During this entire legal process, he has attempted and failed multiple times to overcome his dependence on drugs. At this point, he is in need of a long-term inpatient drug abuse treatment program as opposed to the additional thirty (30) months[8] of imprisonment represented by the denial of the three (3) levels for acceptance of responsibility.

## V.

### NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Title 18 U.S.C. §3553(a)(6) directs that the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" be considered when imposing sentence. In fact, this mandate, to avoid unwarranted sentence disparities, was the primary impetus for the creation of the Federal Sentencing Guidelines.

In 1984, Congress passed the Sentencing Reform Act (SRA) in an attempt to eliminate the disparities for similarly situated offenders that had existed for the prior 50 years under the indeterminate sentencing model. The SRA created and authorized the United States Sentencing Commission to establish sentencing policies and practices that:

---

[6] https://d14rmgtrwzf5a.cloudfront.net/sites/default/files/rrcomorbidity.pdf
[7] Refer to Joint Objection to PSR and Recommendation for Enhancement (DE 28).

11

> [P]rovide certainty and fairness in meeting the purposes of sentencing, *avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct* while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices.

Title 28 U.S.C. §991(b)(1)(B) (Emphasis added).

The United States Sentencing Commission continues to underscore the need to avoid unwarranted sentencing disparity. Specifically, the Commission stated in its 2007 Annual Report:

> The *guidelines are intended to promote fairness* through the establishment of sanctions proportionate to the severity of the crime and *the avoidance of unwarranted disparity by setting similar penalties for similarly situated offenders.*
>
> ***
> Disparity in sentencing has long been a concern for Congress, the criminal justice community, and the public.

U.S. Sentencing Commission, 2007 Annual Report, Chapter 1 p. 1. (Emphasis added.)

We have had extensive research conducted on sentences imposed for violation of the very crimes for which Timothy R. Clancy was convicted. To conduct this research, we contacted Herbert J. Hoelter, the Co-Founder and Chief Executive Officer of the National Center on Institutions and Alternatives (NCIA). NCIA is a nonprofit organization which has worked in the sentencing field for over 38 years and has been recognized for its sentencing expertise in Courts across the country. To this end, using a data collection maintained by the United States Sentencing Commission (USSC), NCIA has prepared a Federal Sentencing Statistical Analysis (FSSA) Report in order to determine how defendants similar to Mr. Clancy were sentenced in

---

[8] 30 months represents the difference in the advisory minimum guideline sentence between offense level 28 and 31.

federal courts across the country. The FSSA Report is attached hereto and incorporated herein as **Exhibit A**.

The United States Sentencing Commission (USSC) maintains a comprehensive, computerized data collection system of federal sentencing information pursuant to 28 U.S.C. §994(w). Each Chief Judge of a district is required to ensure that within 30 days after entry of judgment in a criminal case, the sentencing court submits a report of sentence to the Commission that includes: (1) the Judgment and Commitment Order; (2) the statement of reasons (including the reasons for any departures); (3) any plea agreement; (4) the indictment or other charging document; (5) the presentence report; and (6) any other information the Commission needs.

Data from these documents are extracted and coded for input into the USSC databases. The Commission's computerized datasets, without individual identifiers, are available to download from the United States Sentencing Commissions website. This collection contains information on federal criminal cases sentenced under the Sentencing Guidelines and Policy Statements of the Sentencing Reform Act of 1984. The data files included in this study contain all cases received by the USSC that were sentenced between January 12, 2005, and September 30, 2014. United States Federal Courts handled over 767,000 criminal cases between the fiscal years 2005 and 2014. The USSC estimates that 99% of all cases are included in this dataset.

Mr. Clancy pled guilty to one count of mail fraud in violation of Title 18 U.S.C. §1341. He was scored according to U.S.S.G. §2B1.1 and is held accountable for a loss amount between $1.5 million and $3.5 million.  At the time of this analysis, as calculated in the PSR, the guideline offense level for Mr. Clancy's violation is level 31 with a sentencing guideline range of 108 to 135 months imprisonment. This range is significantly higher than the national average

sentence for similarly situated defendants. Nationwide, defendants similar to Mr. Clancy were sentenced to an average of 46.1 months imprisonment.

The analysis shown in the following table examines the average imprisonment sentence for criminal history category I defendants similar to Mr. Clancy, who violated Title 18 U.S.C. §1341 and were scored according to U.S.S.G. §2B1.1. Because Mr. Clancy did not receive a downward departure pursuant to U.S.S.G. §5K1.1, this table excludes defendants that received this departure. Nationwide 2,646 defendants were sentenced between 2005 and 2014 who met these restrictions. The average imprisonment sentence across all cases was 25 months. In Mr. Clancy's loss category of $1.5 million to $3.5 million, the average imprisonment sentence was 46.1 months.

**Sentences Imposed[9] – Guilty Pleading, Criminal History Category I**
**U.S.S.G. §2B1.1 Offenders**
**Violated Title 18 U.S.C. §1341 Only**
**Excludes U.S.S.G. §5K1.1 Downward Departures**
**National Analysis - FY 2005-2014**

| Loss Amount | Total Cases | Probation/ Fine Only | Prison + Alternatives | Prison Only | Average Imprisonment Length (Months) |
|---|---|---|---|---|---|
| $0 - $550,000 | 1,627 | 727 (44.7%) | 161 (9.9%) | 739 (45.4%) | 9.3 |
| > $550,000 – $1.5 Million | 460 | 26 (5.7%) | 21 (4.6%) | 413 (89.8%) | 30.3 |
| > $1.5 Million – $3.5 Million | 281 | 14 (5.0%) | 8 (2.9%) | 259 (92.2%) | 46.1 |
| > $3.5 Million – $9.5 Million | 168 | 4 (2.4%) | 2 (1.2%) | 162 (96.4%) | 68.7 |
| Over $9.5 Million | 110 | 1 (0.9%) | 3 (2.7%) | 106 (96.4%) | 112.8 |
| All Cases | 2,646 | 772 (29.2%) | 195 (7.4%) | 1,679 (63.5%) | 25 |

The USSC data reveals that the average sentence for mail fraud offense is 25 months. Indeed, the average prison length for the largest loss category, over $9.5 million, is the only loss category found to be within Mr. Clancy's advisory guideline sentencing range. Furthermore, there is some debate as to the impact of Mr. Clancy being denied credit for acceptance of responsibility. The analysis shown in the following table displays the significant impact acceptance of responsibly has had on Title 18 U.S.C. §1341 defendants.

Of the 281 defendants who pled guilty to and were sentenced for a violation of Title 18 U.S.C. §1341 in the same loss category as Mr. Clancy, only 11 were denied credit for acceptance of responsibility.  91.1% of all cases sentenced in this loss category received a three (3) level credit for acceptance of responsibility. Only 3.9% of all defendants who pled guilty to mail fraud

in this loss range did not receive any credit for acceptance. The denial of acceptance has a striking impact on the final sentence. The average imprisonment sentence among defendants that received three (3) levels for acceptance was 43.5 months, while those that received two (2) levels of credit had an average imprisonment sentence of 48.4 months. However, defendants that received no credit for acceptance were sentenced on average to 103.8 months imprisonment. This large disparity in sentencing suggests that the defendants who did not receive credit for acceptance must be significantly different from those that did.

**Sentences Imposed[10] – Impact of Acceptance of Responsibility on Final Sentence**
**Guilty Pleading, Criminal History Category I**
**U.S.S.G. §2B1.1 Offenders**
**Violated Title 18 U.S.C. §1341 Only**
**Loss Amount Between $1.5 Million - $3.5 Million**
**Excludes U.S.S.G. §5K1.1 Downward Departures**
**National Analysis - FY 2005-2014**

| Acceptance of Responsibility | Total Cases | Probation Only | Split Sentence | Prison Only | Average Prison Length (Months) |
|---|---|---|---|---|---|
| -3 | 256 | 13 (5.1%) | 7 (2.7%) | 236 (92.2%) | 43.5 |
| -2 | 14 | 1 (7.1%) | 0 | 13 (92.9%) | 48.4 |
| 0 | 11 | 0 | 1 (9.1%) | 10 (90.9%) | 103.8 |
| All Cases | 281 | 14 (5.0%) | 8 (2.9%) | 259 (92.2%) | 46.1 |

---

[9] This is table two in the attached Federal Sentencing Statistical Analysis (FSSA) report
[10] This is table three (3) in the attached Federal Sentencing Statistical Analysis (FSSA) report

## VI.

### CONCLUSION

In view of the nature of Mr. Clancy's offense and his struggles with gambling and drug addictions, he is in need of in-patient addiction treatment and not a lengthy imprisonment sentence. Based upon the disparity analysis above, Mr. Clancy respectfully requests that the Court impose a below guideline sentence of forty-six (46) months or less, with the recommendation that he participate in the BOP's Residential Drug and Alcohol Program (RDAP). The nearest minimum security camp with a RDAP program to Mr. Clancy's home is FPC Pensacola.

Dated:  February 26, 2016

Respectfully submitted,

By:    /s/RICHARD G. OZELIE
RICHARD G. OZELIE, ESQUIRE
FBN: 266221
OzelieLaw, LLC
750 South Dixie Hwy.
Boca Raton, Florida 33487
Telephone:    (561) 299-3421
Facsimile:    (561) 395-9093
Email:    rozelie@OzelieLaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Memorandum On Behalf Of Timothy R. Clancy In Aid Of Sentencing has been electronically filed with the Clerk of Court and served upon AUSA, Adrienne Rabinowitz, Esquire, via CM/ECF on February 26, 2016.

By:    /s/RICHARD G. OZELIE
RICHARD G. OZELIE, ESQUIRE
Attorney for Timothy R. Clancy

17

# Exhibit A



NATIONAL CENTER ON INSTITUTIONS AND ALTERNATIVES, INC.

*AN AFFILIATE OF WOODS*

7205 RUTHERORD ROAD • BALTIMORE, MARYLAND 21244

PHONE: 443.780.1353 • FAX: 410.265.8078

WWW.NCIANET.ORG

# FEDERAL SENTENCING STATISTICAL ANALYSIS REPORT

*for*

# TIMOTHY R. CLANCY

## PREPARED BY

Herbert J. Hoelter
*Chief Executive Officer*
*and*
Jamie D. Smart
*Research Associate*

## February 2016



**NCIA**
*An Affiliate of Woods*
7205 Rutherford Road
Baltimore, Maryland
21244

443.780.1353 *phone*
410.265.8078 *fax*

www.ncianet.org

*Founders*
Herbert J. Hoelter
Dr. Jerome G. Miller

**NCIA SERVICES**

Criminal Justice Services

Youth In Transition
School

Adult Career
Development Center

Adult Residential Services

Jail Suicide Prevention

Public Policy

# FEDERAL SENTENCING STATISTICAL ANALYSIS REPORT
## *for*
## TIMOTHY R. CLANCY

Title 18 U.S.C. §3553(a)(6) directs that the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" be considered when imposing sentence. To this end, using a data collection maintained by the United States Sentencing Commission (USSC), the National Center on Institutions and Alternatives (NCIA) has prepared a Federal Sentencing Statistical Analysis (FSSA) report in order to determine how defendants similar to Timothy R. Clancy were sentenced in federal courts across the country. NCIA is a nonprofit organization which has worked in the sentencing field for over 38 years and has been recognized for its sentencing expertise in Courts across the country.[1]

## BACKGROUND OF THE USSC DATABASE

The United States Sentencing Commission (USSC) maintains a comprehensive computerized data collection system of federal sentencing information. Pursuant to 28 U.S.C. §994(w) each chief judge of a district is required to ensure that within 30 days after entry of judgment in a criminal case the sentencing court submits a report of the sentence to the USSC that includes: (1) the judgment and commitment order; (2) the statement of reasons (including the reasons for any departures or variances); (3) any plea agreement; (4) the indictment or other charging document; (5) the presentence report; and (6) any other information the USSC needs.

---

[1] NCIA has operated since 1977 as a nonprofit organization. Its Criminal Justice Services (CJS) provides services to defense attorneys, clients and courts throughout the country. CJS provides individualized sentencing evaluations, research and recommendations for persons who are facing incarceration. CJS services include sentencing reports, sentencing guideline assistance, capital case assistance, parole plans, disparity analysis, research, and institutional designation/transfer. NCIA has provided services to over 20,000 clients in all 50 states and in over 75 federal jurisdictions. NCIA has prepared disparity analyses for over 150 individuals being sentenced in federal court.

*individual focus. community perspective.*

This data contains information on federal criminal cases sentenced under the Sentencing Guidelines and Policy Statements of the Sentencing Reform Act of 1984. The data files included in this study contain all cases received by the USSC that were sentenced between January 12, 2005[2] and September 30, 2014. United States Federal Courts handled over 767,000 criminal cases between the fiscal years 2005 and 2014. The USSC estimates that 99% of all cases are included in this dataset.

### ADJUSTMENTS FOR NOVEMBER 1, 2015 GUIDELINE AMENDMENTS

On November 1, 2015, the USSC's amendments to the economic guidelines went into effect. These amendments adjusted the monetary tables, for several guidelines, to account for inflation. Using information from the Bureau of Labor Statistics' Consumer Price Index and the amendment history of each economic guideline, the USSC developed specific multipliers for each table.[3] These multipliers reflect the amount of adjustment made at each monetary level of each table to account for inflation. The amendments in essence reduce the offense level for violations of several of the economic guidelines. For example, a defendant held accountable for a tax-related loss of $80,000 would have an offense level of 16 according to the 2014 U.S.S.G. §2T1.4 tax table. However, the same defendant would have an offense level of 14 according to the 2015 U.S.S.G. §2T1.4 tax table. These two defendants would then face different advisory sentencing guideline ranges making their final sentences incomparable.

To account for the impact these changes will have when comparing actual sentences across loss amounts, NCIA research staff adjusted the loss amounts in the data file to better reflect what the defendants sentence would be according to the inflation adjusted loss levels. NCIA research staff used the inflation multiplier information created by the USSC to adjust loss amounts in the USSC data file. These changes increase the loss amount recorded by the USSC, for each data year, by the inflation multiplier used by the USSC for each loss range. The new loss amount reflects what the current penalty for the offense would be for cases sentenced according to the November 1, 2015 amended guidelines.

---

[2] The data file used for this analysis contains only those cases sentenced after the January 11, 2005 *U.S v Booker* Supreme Court Decision. The fiscal year for all data files runs from October 1st the previous year through September 30th the data year. October 1, 2004 – September 30, 2005 make up the full 2005 data file.

[3] Multipliers for each table can be found in the USSC Proposed Amendment report. Link to the report: http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf

**ncia** *individual focus. community perspective.*

*FSSA Report for Timothy Clancy*
*February 5, 2016*
*Page 3*

**RESEARCH QUESTIONS AND FINDINGS**

1. What is the average sentence for a defendant who pled guilty to violating any statute scored U.S.S.G. §2B1.1 and did not received a downward departure pursuant to U.S.S.G. §5K1.1?

   ➢ Nationwide 36,436 defendants were sentenced for violating statutes scored according to U.S.S.G. §2B1.1. 44% of all cases received a probation sentence. 47.8% of cases received an imprisonment only sentence. The average imprisonment sentence was 13.6 months.

   ➢ 2,239 of those defendants were held accountable for a loss amount between $1.5 million and $3.5 million. The average imprisonment sentence was 39.2 months.

2. What is the average sentence for a defendant who pled guilty to violating only Title 18 U.S.C. §1341 and did not receive a downward departure pursuant to U.S.S.G §5K1.1?

   ➢ Nationwide 2,646 defendants pled guilty and were sentenced for violating Title 18 U.S.C. §1341 and no other statutes. The average imprisonment sentence was 25 months.

   ➢ 281 of these defendants were held accountable for loss amounts between $1.5 million and $3.5 million. The average imprisonment sentence in this loss category was 46.1 months.

3. What is the difference in sentences between defendants who pled guilty to violating one count of Title 18 U.S.C. §1341, have a loss amount between $1.5 million and $3.5 million and did not receive a reduction for acceptance of responsibility pursuant to §3E1.1 and those that received credit?

   ➢ Of the 281 defendants sentenced nationwide for violating Title 18 U.S.C. §1341, who were held accountable for a loss amount between $1.5 million and $3.5 million, only 11 did not receive credit for acceptance of responsibility.

   ➢ 91.1% of all the cases sentenced, received a 3 level reduction for acceptance of responsibly. This resulted in significantly different imprisonment lengths within the same loss category.

   ➢ Defendants who received a 3 level reduction for acceptance of responsible were sentenced to an average of 43.5 months imprisonment while defendants who pled guilty but did not received credit for acceptance of

**ncia** *individual focus. community perspective.*

*FSSA Report for Timothy Clancy*
*February 5, 2016*
*Page 4*

responsibility were sentenced to an average of 103.8 months imprisonment.

**NCIA ANALYSIS**

**STEP 1:**  NCIA received the data sets for fiscal years 2005-2014 from the United States Sentencing Commission (USSC).

**STEP 2:**  Data files were extracted and imported into the statistical computer program SPSS utilizing the SPSS setup files provided by the USSC.

**STEP 3:**  NCIA research staff selected cases to include only those where the information related to a defendant's guideline calculation(s) represented known court findings. That is, only those cases where the Court either agreed with the probation officer's calculations of the sentencing guidelines or where the court clearly documented any changes it made to a defendant's guideline calculation. Total cases = 675,426 cases. (This represents approximately 90% of all cases.)

**STEP 4:**  Mr. Clancy is a Criminal History Category I. NCIA research staff retained only those cases where the defendant was Criminal History Category I. (N=306,180)

**STEP 5:**  Mr. Clancy was scored according to the Fraud Guideline (U.S.S.G. §2B1.1). NCIA research staff retained only those cases where the defendant was scored according to U.S.S.G. §2B1.1 (N=53,738)

**STEP 6:**  Mr. Clancy plead guilty and was not convicted after a trial. NCIA research staff retained only those cases where the defendant plead guilty and was not convicted after a trial. (N=50,911)

**STEP 7:**  Mr. Clancy will not receive a downward departure pursuant to U.S.S.G. §5K1.1. NCIA research staff retained only those cases where the defendant did not receive a downward departure pursuant to U.S.S.G. §5K1.1. (N=42,605).

**STEP 8:**  NCIA research staff examined each case to determine if it contained missing or incomplete sentencing information and retained only those cases with complete sentencing information. (N=42,575)

**STEP 9:**  NCIA research staff examined each case to determine if it contained missing or incomplete loss information and retained only those cases with complete information regarding loss.

ncia *individual focus. community perspective.*

(N=36,436)

**STEP 10:** NCIA research staff organized these 36,436 cases by loss amount according to the 2015 U.S.S.G. §2B1.1 Loss Table.

**NCIA FINDINGS**

**Table One**
**Sentences Imposed – Guilty Pleading, Criminal History Category I**
**U.S.S.G. §2B1.1 Offenders**
**Excludes U.S.S.G. §5K1.1 Downward Departures**
**National Analysis - FY 2005-2014**

| Loss Amount | Total Cases | Probation Only | Split Sentence | Prison Only | Average Prison Length (Months) |
|---|---|---|---|---|---|
| $0 - $550,000 | 28,486 | 15,524 (54.5%) | 2,666 (9.4%) | 10,296 (36.2%) | 5.7 |
| > $550,000 – $1.5 Million | 3,527 | 285 (8.1%) | 169 (4.8%) | 3,073 (87.1%) | 28.2 |
| > $1.5 Million – $3.5 Million | 2,239 | 130 (5.8%) | 85 (3.8%) | 2,024 (90.4%) | 39.2 |
| > $3.5 Million – $9.5 Million | 1,297 | 72 (5.6%) | 32 (2.5%) | 1,193 (92.0%) | 54.8 |
| Over $9.5 Million | 887 | 22 (2.5%) | 25 (2.8%) | 840 (94.7%) | 84.8 |
| All Cases | 36,436 | 16,033 (44.0%) | 2,977 (8.2%) | 17,426 (47.8%) | 13.6 |

**STEP 11:** Mr. Clancy violated one count of Title 18 U.S.C. §1341 and was scored according to the Fraud Guideline (U.S.S.G. §2B1.1).

NCIA research staff selected cases where the defendant violated only Title 18 U.S.C. §1341 and were scored according to U.S.S.G. §2B1.1. (N=2,646)

**STEP 12:** NCIA research staff organized these 2,646 cases by loss amount according to the 2015 U.S.S.G. §2B1.1 Loss Table.

ncia *individual focus. community perspective.*

*FSSA Report for Timothy Clancy*
*February 5, 2016*
*Page 6*

**Table Two**
**Sentences Imposed – Guilty Pleading, Criminal History Category I**
**U.S.S.G. §2B1.1 Offenders**
**Violated Title 18 U.S.C. §1341 Only**
**Excludes U.S.S.G. §5K1.1 Downward Departures**
**National Analysis – FY 2005-2014**

| Loss Amount | Total Cases | Probation Only | Split Sentence | Prison Only | Average Prison Length (Months) |
|---|---|---|---|---|---|
| $0 - $550,000 | 1,627 | 727 (44.7%) | 161 (9.9%) | 739 (45.4%) | 9.3 |
| > $550,000 – $1.5 Million | 460 | 26 (5.7%) | 21 (4.6%) | 413 (89.8%) | 30.3 |
| > $1.5 Million – $3.5 Million | 281 | 14 (5.0%) | 8 (2.9%) | 259 (92.2%) | 46.1 |
| > $3.5 Million – $9.5 Million | 168 | 4 (2.4%) | 2 (1.2%) | 162 (96.4%) | 68.7 |
| Over $9.5 Million | 110 | 1 (0.9%) | 3 (2.7%) | 106 (96.4%) | 112.8 |
| All Cases | 2,646 | 772 (29.2%) | 195 (7.4%) | 1,679 (63.5%) | 25 |

**STEP 13:** Mr. Clancy was denied the §3E1.1 reduction for acceptance of responsibly for having an addiction to illegal drugs. NCIA research staff selected only those defendants sentenced for violating only Title 18 U.S.C. §1341 and were held accountable for a loss amount between $1.5 million and $3.5 million. (N=281)

**STEP 14:** NCIA research staff organized these 281 cases by level of §3E1.1 reduction.

ncia *individual focus. community perspective.*

*FSSA Report for Timothy Clancy*
*February 5, 2016*
*Page 7*

**Table Three**
**Sentences Imposed – Impact of Acceptance of Responsibility on Final Sentence**
**Guilty Pleading, Criminal History Category I**
**U.S.S.G. §2B1.1 Offenders**
**Violated Title 18 U.S.C. §1341 Only**
**Loss Amount Between $1.5 Million - $3.5 Million**
**Excludes U.S.S.G. §5K1.1 Downward Departures**
**National Analysis - FY 2005-2014**

| Acceptance of Responsibility | Total Cases | Probation Only | Split Sentence | Prison Only | Average Prison Length (Months) |
|---|---|---|---|---|---|
| -3 | 256 | 13 (5.1%) | 7 (2.7%) | 236 (92.2%) | 43.5 |
| -2 | 14 | 1 (7.1%) | 0 | 13 (92.9%) | 48.4 |
| 0 | 11 | 0 | 1 (9.1%) | 10 (90.9%) | 103.8 |
| All Cases | 281 | 14 (5.0%) | 8 (2.9%) | 259 (92.2%) | 46.1 |

ncia *individual focus. community perspective.*